# GUFFEY *v.* JAMES A. SMITH.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 86.   Argued December 2, 3, 1914.—Decided April 5, 1915.

Under the settled rule of decision in Illinois an oil and gas lease like that involved in this suit passes to the lessee, his heirs and assigns, a present vested freehold interest in the premises, and an option on the part of the lessee to surrender does not create a tenancy at will, give the lessor an option to compel surrender or make the lease void as wanting in mutuality.

Decisions of the highest courts of the State in which the property is situated are accepted and applied by the Federal courts as rules of property in passing upon the estate and rights passing by such a lease.

Where, as is the case in Illinois, the holder of such a lease cannot maintain ejectment in the state courts, he cannot, under §§ 721 and 1914, maintain such an action in the Federal courts in that State.

Where ejectment cannot be maintained by one holding a gas and oil lease against another claiming under a later lease, and no other action affords an adequate remedy, the earlier lessee may maintain a suit in equity to restrain the later lessee and for accounting and discovery in the Federal courts where the requisite amount is involved and diverse citizenship exists, even though such a suit, by reason of the lessee having an option to surrender, could not be maintained in the courts of the States.

Remedies afforded and modes of procedure pursued in the Federal courts sitting as courts of equity are not determined by local laws or rules of decision, but by general principles, rules and usages of equity having uniform operation in those courts wherever sitting.

According to the general principles and rules of equity enforced in the Federal courts, a clause in a lease permitting the lessee to surrender it is not an obstacle to enforcing the lease in equity against those who, under a later lease, are committing waste.

Whether a lease is so unfair and inequitable that it cannot be enforced by the lessee in equity must be determined in view of the circumstances under which it was given; and in this case *held* that an oil and gas lease of undeveloped land requiring all expenses to be paid by the lessee and providing for reasonable royalties and fixed rental

during a designated period of delay is not so unfair and inequitable as to require that equitable relief be withheld, even where it contains a provision permitting the lessee to surrender it at any time.

Under the statutes of Illinois a lessee who omits to pay rent when due may cure his default by payment at any time prior to demand and notice or within the time named in the notice, and if so paid the lessee's rights are the same as though the default had not occurred.

On an accounting for oil and gas taken under color of a lease later than that of plaintiff but without actual knowledge thereof, although the same was recorded, *held*, that the later lessees were entitled to be credited with the cost of improvements and operation, incurred prior to, but not after, the date on which they were actually notified of the rights of the earlier lessee. The continued taking thereafter was a wilful taking and appropriation of the property of another.

202 Fed. Rep. 106, reversed.

THE facts are stated in the opinion.

*Mr. Jos. W. Bailey* and *Mr. J. H. Beal*, with whom *Mr. Robert J. Dodds* was on the brief, for petitioners.

*Mr. J. A. Hindman* for respondents:

To warrant the granting of any of the relief sought, the complainants must not only come into court with "clean hands," but it must clearly appear that the contract upon which they base their demand for relief is one which a court of equity will enforce. They must recover, if at all, upon the strength of their own title and upon the merits of their own cause; *Michigan Pipe Co.* v. *Fremont Pipe Co.*, 111 Fed. Rep. 284; *Jackson* v. *Ashton*, 11 Peters, 229; *Pope Mfg. Co.* v. *Gormully*, 144 U. S. 224; *Federal Oil Co.* v. *Western Oil Co.*, 112 Fed. Rep. 373; *S. C.*, 121 Fed. Rep. 675; *Rust* v. *Conrad*, 47 Michigan, 449; High on Injunctions (3d ed), §§ 22, 698; 22 Cyc., p. 749; 10 Am. and Eng. Enc. (1st ed.), p. 784.

Because of the peculiar character of oil and gas as "property," and the violent fluctuations in the value of lands and leaseholds incident to the discovery of these

substances,.the courts have placed contracts of this kind
in a class by themselves, and in the light of the known
character of the business of "oil mining," construe them
most strictly against the lessee and favorable to the lessor.
*Huggins* v. *Daley,* 99 Fed. Rep. 606; *Ohio Oil Co.* v.
*Indiana,* 177 U. S. 190; *Parish Fork Oil Co.* v. *Bridge-
water Gas Co.,* 51 W. Va. 583; *Steelsmith* v. *Gartlan,* 45
W. Va. 27; *Betman* v. *Harness,* 42 W. Va. 433; *Venture
Oil Co.* v. *Fretts,* 152 Pa. St. 451; *Watford Oil Co.*·v.
*Shipman,* 233 Illinois, 9; *Kolachny* v. *Galbreath,* 26 Okla-
homa, 722; Bryan on Petroleum and Natural Gas, p. 146;
Donohue on Petroleum and Gas, p. 149; Thornton on
Law Relating to Oil and Gas, p. 98.

The contracts upon which the complainants base
these actions should not be enforced in a court of equity
because they are deceptive, unjust, unequal, unfair and
inequitable; while they purport to be for the sole and
only purpose of mining and operating for oil and gas,
they contain no provision requiring this purpose to be
accomplished, but permit the complainants to hold the
premises dormant for the purpose of speculation, and
thus defeat the very purpose for which they were given.
Cases *supra,* and *Nash* v. *Towne,* 5 Wall. 689; *Miss. &
Mo. R. R.* v. *Cromwell,* 91 U. S. 643; *King* v. *Hamil-
ton,* 4 Pet. 311.

The leases owned by the complainants, and upon which
they base these actions, are not enforceable in a court of
equity (a) for want of consideration, (b) for want of
mutuality of engagement and (c) for want of mutuality
of remedy.

The consideration for the execution of the leases in
question was·not the recited $1.00, nor the 25 cents a
year mentioned, but the real consideration was the devel-
opment of the premises for, and if found, the produc-
tion of oil and gas, and the rents and royalties resulting .
therefrom and dependent thereon. If the lease fails to

bind the lessee to diligent search for oil and gas, it is
without consideration, binding upon neither party, and
voidable at the pleasure of either.  Cases *supra*, and *Foster*
v. *Elk Fork Oil Co.*, 90 Fed. Rep. 178; *Elk Fork Oil Co.* v.
*Jennings*, 80 Fed. Rep. 839; *Natural Gas Co.* v. *Teel*,
67 S. W. Rep. 545; *S. C.*, 68 S. W. Rep. 976; *Eclipse Oil
Co.* v. *South Penn. Oil Co.*, 47 W. Va. 84; *Trees* v. *Eclipse
Oil Co.*, 47 W. Va. 107; *Crawford* v. *Ritchey*, 43 W. Va.
252; *Cassel* v. *Crothiers*, 193 Pa. St. 193; *Gadbury* v. *Ohio
&c. Co.*, 162 Indiana, 9.

Contracts, unperformed, optional as to one of the par-
ties, are optional as to both.  Cases *supra*, and *So. Express
Co.* v. *Western N. C. R. R.*, 99 U. S. 191; *United States* v.
*Noe*, 23 How. 312; *Dorsey* v. *Packwood*, 12 How. 126;
*Reece* v. *Zinn*, 103 Fed. Rep. 97; *Cold Blast Co.* v. *Kansas
City &c. Co.*, 114 Fed. Rep. 77; *Am. Cotton Co.* v. *Kirk*,
68 Fed. Rep. 791; *Crane* v. *Crane*, 105 Fed. Rep. 869;
*Weaver* v. *Weaver*, 109 Illinois, 225; *Chicago Gas Light
Co.* v. *Lake*, 130 Illinois, 42; *Lancaster* v. *Roberts*, 144
Illinois, 213; *Vogle* v. *Peakoc*, 157 Illinois, 339; *Welty* v.
*Jacobs*, 171 Illinois, 624; *East St. Louis &c. Co.* v. *East
St. Louis*, 182 Illinois, 433; *Cleveland* v. *Martin*, 218
Illinois, 73; *Bauer* v. *Lumaghi Coal Co.*, 209 Illinois, 316;
*Watford Oil Co.* v. *Shipman*, 233 Illinois, 9; *Cortelyou* v.
*Barnsdall*, 236 Illinois, 138; *Ulry* v. *Keith*, 237 Illinois,
284; *Iron Age Pub. Co.* v. *West. Un. Tel. Co.*, 83 Alabama,
493; *Snodgrass* v. *South Penn. Oil Co.*, 47 W. Va. 509;
*Campbell* v. *Lambert*, 36 La. Ann. 35; *Hoffman* v. *Maffioli*,
104 Wisconsin, 630; *Luke* v. *Livingston*, 70 S. E. Rep. 21;
*Mallet* v. *Watkins*, 132 Georgia, 700; *Fowler Utility Co.* v.
*Gray*, 168 Indiana, 1; *Gadbury* v. *Ohio Oil Co.*, 162 Indiana,
9; Donahue on Petroleum and Gas, p. 155; 22 Cyc. 950.

A court of equity never interferes where the power
of revocation exists.  Cases *supra*, and *Rutland Marble
Co.* v. *Ripley*, 10 Wall. 339, 359; *Kerrick* v. *Hannaman*,
168 U. S. 328, 336; *Pantages* v. *Grauman*, 191 Fed. Rep.

318; *Shubert* v. *Woodward,* 167 Fed Rep. 47; *Norris* v. *Fox,* 45 Fed. Rep. 406; *Alworth* v. *Seymore,* 44 N. W. Rep. 1030; *Fowler Utility Co.* v. *Gray,* 168 Indiana, 1; *Welty* v. *Jacobs,* 171 Illinois, 624; *Watford Oil Co.* v. *Shipman,* 233 Illinois, 9.

The complainants should not recover as they have neither done equity by performing nor by tendering performance of the optional provisions of the lease, nor in their bill do they offer to do equity by offering to perform whatever the court shall decree ought to be done on their part. Cases *supra,* and *Kelsey* v. *Crowther,* 162 U. S. 404; *Morgan* v. *Morgan,* 2 Wheat. 290; *Colson* v. *Thompson,* 2 Wheat. 336; *Brashier* v. *Gratz,* 6 Wheat. 528; *Bank of Columbia* v. *Hanger,* 1 Pet. 455; *Purcell* v. *Coleman,* 4 Wall. 513; *Watts* v. *Waddle,* 6 Pet. 389; *Boon* v. *Missouri Co.,* 17 How. 340; *Thayer* v. *Wilmington,* 105 Illinois, 540; *Chi. Mun. G. L. Co.* v. *Town of L.,* 130 Illinois, 42; Story's Eq. Jur., § 736; Pomeroy's Spec. Performance, § 330.

The completion of a well upon the demised premises within the time stipulated (nine months) was a condition precedent to the vesting of any estate. And at the expiration of the time given in which to make the preliminary test, none having been made, the lessor had a right to avoid the lease by leasing to another. *Crawford* v. *Richey,* 43 W. Va. 252; *Gadbury* v. *Ohio Co.,* 162 Indiana, 9; *Oil Co.* v. *Fretts,* 152 Pa. St. 451.

The lease of the complainants should not be enforced in a court of equity because of the laches of the complainants in that they failed to carry out the purpose of the lease, but stood by awaiting the result of development by others, the fruit of whose enterprise, labor and money, they now seek to appropriate. *Hollingsworth* v. *Fry,* 4 Dall. 345; *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 593; *Johnson* v. *Standard Mining Co.,* 148 U. S. 360; *Munroe* v. *Armstrong,* 96 Pa. St. 307; *Iron Co.* v. *Trout,*

83 W. Va. 409; 16 Cyc. 161; .22 Am. & Eng. Ency. (1st ed.), p. 1043.

Oil and gas *in situ* are not capable of private ownership, but they become "property" only when reduced to possession. Title to these substances is inchoate and contingent upon their discovery and production. Leases of this character, therefore, vest in the lessee no present title to the oil and gas, but are a mere license to explore for, and, if found, to reduce the same to possession. Cases *supra*, and *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *State* v. *Ohio Oil Co.,* 150 Indiana, 21; *Heal* v. *Niagara Oil Co.,* 150 Indiana, 483; *People's Gas Co.* v. *Tyner,* 131 Indiana, 277; *Townsend* v. *State,* 147 Indiana, 624; *Hancock* v. *Diamond Glass Co.,* 162 Indiana, 146; *New Am. Oil Co.* v. *Troyer,* 166 Indiana, 402; *Ray* v. *Gas Co.,* 138 Pa. St. 576; *Dark* v. *Johnson,* 55 Pa. St. 164; *Klepner* v. *Lemon,* 176 Pa. St. 502; *Brown* v. *Vandergriff,* 80 Pa. St. 142; *Funk* v. *Halderman,* 53 Pa. St. 229; *Keir* v. *Patterson,* 41 Pa. St. 357; *Jones* v. *Forest Oil Co.,* 194 Pa. St. 379; *Wood Co. Pet. Co.* v. *W. Va. Trans. Co.,* 28 W. Va. 210; *Hall* v. *Vernon,* 47 W. Va. 295; *Crawford* v. *Richey,* 43 W. Va. 252; *Guffey* v. *Hukill,* 34 W. Va. 49; *Shepperd* v. *McCalmont Oil Co.,* 38 Hun, 37; *Watford Oil Co.* v. *Shipman,* 233 Illinois, 9; *Poe* v. *Ulry,* 233 Illinois, 56; *Bruner* v. *Hicks,* 230 Illinois, 536; Barringer on Mines and Mining, pp. 30, 31.

If the oil and gas in place, like solid minerals, were capable of ownership, and if it were conceded that the leases in question conveyed to the complainants title to the oil and gas *in situ,* the measure of damages, in an action at law for their conversion, would be the value of these substances in place, and not the amount for which they were sold, unless the trespass was wilful or malicious. *Bolles Wooden-Ware Co.* v. *United States,* 106 U. S. 433; *Colorado &c. Co.* v. *Truck,* 70 Fed. Rep. 294; *Durant Min. Co.* v. *Percy &c. Co.,* 93 Fed. Rep. 166; *Golden*

*Reward Min. Co.* v. *Buxton,* 97 Fed. Rep. 413; *Resurrection Co.* v. *Fortune &c., Co.,* 129 Fed. Rep. 668; *Mon. Min. Co.* v. *St. L. Min. Co.,* 147 Fed. Rep. 897; *United States* v. *Homestake Min. Co.,* 117 Fed. Rep. 481; *Montrozona Min. Co.* v. *Thacher,* 75 Pac. Rep. 595; *United Coal Co.* v. *Canon City Coal Co.,* 24 Colorado, 116; *Dyke* v. *National Transit Co.,* 22 N. Y. App. Div. 360; *Stockbridge Iron Co.* v. *Cone Iron Works Co.,* 102 Massachusetts, 80.

.Where one having a superior title goes into a court of equity to assert his right to property, even as against a wilful wrongdoer, he is required to do equity by paying for improvements placed upon the property. And if he seek an accounting for rents and profits, he must bear the cost of production. *Williams* v. *Gibbes,* 20 How. 535; *Ruffners* v. *Lewis,* 7 Leigh, 720; *Lagger* v. *Mut. Labor Assn.,* 146 Illinois, 296; *Williams* v. *Vanderbilt,* 145 Illinois, 239; *Butler* v. *Butler,* 164 Illinois, 171; *Eury* v. *Merill,* 61 Illinois, 193; *Gloss* v. *Clark,* 47 Ill. App. 609; *Cable* v. *Ellis,* 120 Illinois, 136; *Britt* v. *Yeaton,* 101 Illinois, 242; *Bradley* v. *Snyder,* 14 Illinois, 363; *Williamson* v. *Jones,* 34 W. Va. 563; *Chaney* v. *Colman,* 77 Texas, 100; *Phillips* v. *Coast,* 130 Pa. St. 572; 3 Pomeroy's Eq. Jur., § 1241.

It was error to charge interest on the respective amounts the defendants were decreed to pay the complainants, from the tenth day of August, 1910. Rev. Stat. Illinois, § 2, Ch. 74; *Imperial Hotel* v. *Claffin Co.,* 175 Illinois, 124; *Florshein* v. *Ill. Tr. Sav. Bank,* 192 Illinois, 382; *Foote* v. *Ill. Tr. Sav. Bank,* 193 Illinois, 600; *Espert* v. *Alschlanger,* 117 Ill. App. 484; *Hablet* v. *Bloomington,* 71 Ill. App. 204; *Gloss* v. *Clark,* 97 Ill. App. 620.

When the nature of property in natural gas and oil contained in the earth, and the legal effect of instruments of the character of those here involved have been settled authoritatively by the rulings of the highest court of the State in which they have their *situs,* such decisions

establish rules of property peculiar to mining in that State, which the Federal courts will recognize and follow. *Burgess* v. *Seligman*, 107 U. S. 20; *Elmdorf* v. *Taylor*, 10 Wheat. 152; *Bucher* v. *Chesire R. Co.*, 125 U. S. 555; *Brown* v. *VanBraam*, 3 Dall. 344; *Riddle* v. *Mandeville*, 1 Cr. 290; *S. C.*, 5 Cr. 322; *Telfair* v. *Stead*, 2 Cr. 407; *Batton* v. *Easton*, 1 Wheat. 476; *Powell* v. *Harmon*, 2 Pet. 214; *Green* v. *Neal*, 6 Pet. 292; *Jackson* v. *Chew*, 12 Wheat. 153; *Henderson* v. *Griffin*, 5 Pet. 151; *Bank of Hamilton* v. *Dudley*, 2 Pet. 492; *Smith* v. *Kernichan*, 7 How. 198; *Neesmith* v. *Sheldon*, 7 How. 812; *Golden* v. *Prince*, 3 Washington, 318; *Suydam* v. *Williamson*, 24 How. 427, *contra; Kuhn* v. *Fairmount Coal Co.*, 215 U. S. 349; *Swift* v. *Tyson*, 16 Pet. 1; *Lane* v. *Vick*, 3 How. 464; *Foxcraft* v. *Mallet*, 4 How. 353; *Rowen* v. *Runnels*, 5 How. 134; *Williamson* v. *Berry*, 8 How. 495.

The questions involved in these cases have been firmly settled by a long and uniform line of decisions by the highest court of Illinois, and by the highest Federal court in that jurisdiction, and likewise by the United States Supreme Court; these decisions should forever foreclose further agitation of these questions in that State. Cases *supra*, and *Frisby* v. *Ballance*, 5 Illinois, 287; *Bowman* v. *Cunningham*, 78 Illinois, 48; *Weaver* v. *Weaver*, 109 Illinois, 869; *Lancaster* v. *Roberts*, 144 Illinois, 213; *Vogle* v. *Pekoc*, 157 Illinois, 339; *Welty* v. *Jacobs*, 171 Illinois, 624; *Baur* v. *Lumaghi Coal Co.*, 209 Illinois, 316; *Cleveland* v. *Martin*, 218 Illinois, 73; *Bruner* v. *Hicks*, 230 Illinois, 536; *Watford Oil and Gas Co.* v. *Shipman*, 233 Illinois, 9; *Smith* v. *Guffey*, 202 Fed. Rep. 106; *Rutland Marble Co.* v. *Ripley*, 10 Wall. 339, 359.

Mr. Justice Van Devanter delivered the opinion of the court.

This was a suit in equity brought in the Circuit Court of the United States for the Eastern District of Illinois

by the holders of an oil and gas lease covering a small tract of land in Crawford County, Illinois, to enjoin operations under a later and similar lease and to obtain a discovery and an accounting in respect of the oil and gas produced and sold in the course of operations already had. In due course the case was referred to a master who took the evidence, reported the same with his conclusions upon questions of fact and law and recommended a decree awarding the relief prayed, but taking no account of the gas theretofore used or sold. Exceptions to the report were filed by the defendants and at the final hearing the Circuit Court overruled the exceptions, confirmed the report and entered a decree as recommended. The decree was reversed by the Circuit Court of Appeals with a direction that the bill be dismissed, the ground of decision being that the complainants were not entitled to relief in equity and should be remitted to such remedy as they might have at law, because by the terms of their lease they had an option to surrender it at any time. 202 Fed. Rep. 106. Other questions in the suit were not considered by that court. The case is now here upon a writ of certiorari.

Both leases were for the same tract and were given by James A. Smith, who owned it in fee simple. The earlier lease was given to one Walton May 22, 1905, and by two successive assignments made in November and December following was transferred to Joseph F. Guffey and others, the complainants. It and the assignments were properly recorded June 15, 1906. The later lease was given to one Allison August 9, 1906, was assigned shortly thereafter to one Willett and was transferred March 25, 1907, to Solley, Johnson and Hennig, three of the defendants. There was also an intermediate lease to one Wilcox, given March 23, 1906, but as it was voluntarily surrendered and nothing is claimed thereunder, it suffices to say (a) that it contained a provision whereby the lessee

therein agreed to protect the lessor against any expense or damage that might arise by reason of the earlier lease, (b) that before surrendering it Wilcox drilled a well upon the premises in an effort to find oil and gas, but without success, and (c) that the complainants, upon learning of this lease, promptly served upon Wilcox and the lessor a notice asserting the rights conferred by the prior lease.

Allison and his immediate assignee, Willett, took the subsequent lease with actual notice of the earlier one and with constructive, if not actual, notice of its transfer to the complainants, but made no inquiry of the latter respecting its status or their claim under it. Nothing was done under the subsequent lease by Allison, but after its assignment to Willett the latter entered upon the premises, with the lessor's sanction, and drilled a well which yielded a flow of gas but no oil. Upon learning of these drilling operations the complainants, in a written notice to Willett and the lessor, again asserted their claim under the prior lease and demanded that the operations cease.

Solley and his associates took the assignment from Willett without actual knowledge of the prior lease, but under the local law were constructively charged with notice of it and of its transfer to the complainants, for both were duly recorded. They acted upon the advice of an abstractor who failed to make a proper examination of the records. After receiving the assignment, Solley and his associates, with the lessor's approval, proceeded to drill other wells upon the premises and developed the presence therein of oil in paying quantities. On August 1, 1907, they were actually and fully informed of the prior lease and of the complainants' purpose to insist upon the rights conferred by it and to obtain redress for the invasion of those rights, but they persisted in their drilling operations and produced and sold from the premises large quantities of oil. These operations were being continued when the suit was

brought (March 24, 1908) and when the accounting was had before the master. Most of the oil taken from the premises was extracted and sold after August 1, 1907, the date when Solley and his associates were actually and fully informed of the complainants' claim.

In its terms the prior lease of May 22, 1905, under which the complainants claim, substantially conforms to one in common use in unexplored territory, as is shown by the evidence in this case and by reported decisions in other cases. It recites that it was given in consideration of one dollar paid to the lessor and the covenants and agreements of the lessee therein set forth. It contains the usual words of grant and demise; runs to the lessee, Walton, his heirs and assigns; describes the purpose for which it was given as that of mining and operating for oil and gas and laying pipe lines and building tanks and other structures to take care of those substances when produced, and defines the terms for which it was to endure as five years from its date "and as long thereafter as oil or gas or either of them is produced" from the premises. The lessee covenants and agrees therein, first, to deliver to the lessor, free of cost, in the pipe line to which the wells may be connected the equal one-eighth part of all oil produced and saved from the premises; second, to pay one hundred dollars per year for the gas from each gas well the product of which is marketed and used off the premises; third, to locate all wells so as to interfere as little as possible with the cultivated portions of the land; and fourth, to complete a well on the premises within nine months after the date of the lease, or to pay at the rate of twenty-five cents per acre per year, quarterly in advance, for the additional time the completion of a well is delayed beyond the nine months, such payments to be made directly to the lessor or deposited to his credit in the Exchange Bank, at Martinsville, Illinois. There is also a surrender clause to the effect that "upon the

payment of one dollar, at any time," the lessee, his heirs or assigns, "shall have the right to surrender this lease for., cancellation, after which all payments and liabilities thereafter to accrue" thereunder "shall cease and determine."

Among the master's findings and conclusions which were approved by the Circuit Court were the following:

"The Master further finds that the complainants have been at all times financially responsible and able to perform the covenants of their lease; that they have not drilled a well on said premises, but that they have paid all the rentals required by the terms of said lease to be paid, at the rate of twenty-five cents per acre, and deposited the same in the bank designated in the lease to receive the same, for the owner of the land."

"That prior to purchasing the Allison lease, Willett made inquiry by telephone of the Exchange Bank, at Martinsville, whether or not rentals had been paid on the Walton lease by the complainants, and was informed by the bank that no such payments had been made or deposited to the credit of James A. Smith, although, as a matter of fact, the Master further finds that, at the time the said Bank gave this information, the rental money had in fact been deposited to the credit of the said James A. Smith."

"That the Walton lease, under which complainants claim title, has never been forfeited for failure to comply with the terms thereof, and up to the time of the filing of this suit, no grounds existed whereby such a forfeiture could be declared."

In addition to Solley and his associates, the defendants to the suit included the lessor and the Ohio Oil Company, the latter having purchased the oil with knowledge of the premises from which it was produced and of the complainants' claim under the prior lease.

It is settled by the decisions of the Supreme Court of

Illinois that an oil and gas lease like that of the complainants passes to the lessee, his heirs and assigns, a present vested right—"a freehold interest"—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality. *Bruner* v. *Hicks*, 230 Illinois, 536, 540, 542; *Watford Oil and Gas Co.* v. *Shipman*, 233 Illinois, 9, 13, 14; *Poe* v. *Ulrey, Id.* 56, 62, 64; *Ulrey* v. *Keith*, 237 Illinois, 284, 298; *People* v. *Bell, Id.*, 332, 339; *Daughetee* v. *Ohio Oil Co.*, 263 Illinois, 518, 524. These decisions constitute rules of property and must be accepted and applied in passing upon the complainants' rights. *McGoon* v. *Scales*, 9 Wall. 23, 27; *Bucher* v. *Cheshire Railroad*, 125 U. S. 555, 583; *Barber* v. *Pittsburgh &c. Ry.*, 166 U. S. 83, 99.

It also is settled that in the courts of Illinois the holder of such a lease cannot maintain an action of ejectment thereon (*Watford Oil and Gas Co.* v. *Shipman, supra*, p. 12; *Gillespie* v. *Fulton Oil and Gas Co.*, 236 Illinois, 188, 206), and by reason of the legislation of Congress requiring that in actions at law in the Federal courts of first instance effect shall be given to the local laws and modes of proceeding (Rev. Stat., §§ 721, 914) it results that the complainants could not have maintained an action of ejectment in the Circuit Court. An action for damages, of course, would not have afforded a plain, adequate and complete remedy in the circumstances and, if such a remedy was to be had, it was necessary to resort to a suit in equity for an injunction, discovery and accounting, as was done. *Joy* v. *St. Louis*, 138 U. S. 1, 46; *Coosaw Mining Co.* v. *South Carolina*, 144 U. S. 550, 567; *Franklin Telegraph Co.* v. *Harrison*, 145 U. S. 459, 474. Thus the principal question for decision is whether such a suit could be successfully maintained in the Circuit Court,

diverse citizenship and the requisite jurisdictional amount being conceded.

The Supreme Court of Illinois, while fully sustaining the right to maintain such a suit in the courts of the State when the lease contains no clause giving the lessee an option to surrender it (*Gillespie* v. *Fulton Oil and Gas Co., supra*), holds that the presence of such a clause in the lease operates to prevent the lessee from directly or indirectly enforcing it in equity (*Watford Oil and Gas Co.* v. *Shipman* and *Ulrey* v. *Keith, supra*), the ground of distinction being that the surrender clause, although lawful in itself and not affecting the validity of the lease, renders it so lacking in mutuality that equity will remit the lessee to his remedy at law. These decisions, it is insisted, should have been accepted and applied by the Circuit Court. To this we cannot assent. By the legislation of Congress and repeated decisions of this court it has long been settled that the remedies afforded and modes of proceeding pursued in the Federal courts, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules and usages of equity having uniform operation in those courts wherever sitting. Rev. Stat., §§ 913, 917; *Neves* v. *Scott*, 13 How. 268, 272; *Payne* v. *Hook*, 7 Wall. 425, 430; *Dodge* v. *Tulleys*, 144 U. S. 451, 457; *Mississippi Mills* v. *Cohn*, 150 U. S. 202, 204. As was said in the first of these cases, "Wherever a case in equity may arise and be determined, under the judicial power of the United States, the same principles of equity must be applied to it, and it is for the courts of the United States, and for this court in the last resort, to decide what those principles are, and to apply such of them, to each particular case, as they may find justly applicable."

It next is insisted that according to the general principles and rules of equity administered in the Federal courts the surrender clause constitutes an insuperable obstacle

to granting the relief sought, the argument being that, as the complainants have a reserved option to surrender the lease at any time, it cannot be specifically enforced against them and therefore cannot be similarly enforced in their favor. The rule intended to be invoked has to do with the specific performance of executory contracts, is restrained by many exceptions, and has been the subject of divergent opinions · on the part of jurists and text-writers. Without considering it in other aspects, we think it is without present application. Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. The complaint is not that performance of some promised act is being withheld or refused, but that complainants' vested freehold right is being wrongfully violated and impaired in a way which calls for preventive relief. In this respect the case is not materially different from what it would be if the complainants were claiming under an absolute conveyance rather than a lease. In a practical sense the suit is one to prevent waste, and it comes with ill grace for the defendants to say that they ought not to be restrained because perchance the complainants may sometime exercise their option to surrender the lease. We think this option, which has not been exercised and may never be, is not an obstacle to the relief sought.

Another contention of the defendants is that the lease is so unfair and inequitable in its terms that relief in equity should be withheld and the complainants left to seek a remedy at law, which is tantamount to saying that they must submit to the practical destruction of their leasehold and accept such reparation as may be obtained through recurring actions for damages. Whether

the lease is unfair and inequitable must be determined
in view of the circumstances in which it was given. *Wil-
lard* v. *Tayloe*, 8 Wall. 557, 570, 571; *Marble Company* v.
*Ripley*, 10 Wall. 339, 357; *Franklin Telegraph Co.* v.
*Harrison*, 145 U. S. 459, 473. They were these: Whether
the leased tract contained oil or gas was not known. It
was in an undeveloped district in which there was no oil
or gas well and no pipe line leading to a market. Drilling
wells was attended with large expense, the cost of each
well being upwards of one thousand dollars, according
to the testimony of one of the defendants. No fraud,
deception or overreaching was practiced in procuring
the lease. The parties were competent to contract with
each other and entered into the lease because in the cir-
cumstances its provisions were satisfactory to them.
Under its terms the cost of the drilling was to be borne
by the lessee. If the undertaking was unsuccessful he
alone was to stand the loss, and if it was successful the
lessor was to share in the results by receiving substantial
royalties, the reasonableness of which is not questioned.
The consideration for the lease, viz., one dollar paid to
the lessor and the covenants and agreements of the lessee,
cannot be pronounced unreasonable. Similar leases rest-
ing upon a like consideration often have been sustained
in cases not distinguishable from this.[1] The lease was
to remain in force five years and as much longer as oil
or gas was being produced from the premises; in other
words it was to expire in five years unless oil or gas was
produced within that time. The lessee expressly cov-
enanted to drill a well within nine months or to pay a

[1] See *Allegheny Oil Co.* v. *Snyder*, 106 Fed. Rep. 764; *Brewster* v.
*Lanyon Zinc Co.*, 140 Fed. Rep. 801; *Brown* v. *Fowler*, 65 Ohio St. 507;
*Gas Co.* v. *Eckert*, 70 Ohio St. 127; *Venedocia Oil Co.* v. *Robinson*,
71 Ohio St. 302; *Lowther Oil Co.* v. *Guffey*, 52 W. Va. 88; *Pyle* v. *Hender-
son*, 65 W. Va. 39; *Brick Co.* v. *Bailey*, 76 Kansas, 42; *Gillespie* v.
*Fulton Oil Co.*, 236 Illinois, 188.

rental of twenty-five cents per acre per year quarterly, in advance, for such time as the completion of the well was delayed beyond that period, the delay, of course, not to extend beyond the primary term of five years. The terms of the covenant doubtless were suggested by the undeveloped condition of the district and by the expense and risk incident to exploring for oil and gas. They evidently were satisfactory to the lessor at the time and the record discloses no reason for holding that in the circumstances they were unreasonably liberal to the lessee. Some criticism is directed against the reserved option to surrender, but it is difficult to perceive how it could be declared inequitable. If it was not exercised the lessee would be bound by his covenants, and if exercised the lessor would be free to deal with the premises as he chose. A surrender was not to affect any existing liability, but only to avoid those "thereafter to accrue." A like clause is in the subsequent lease and, according to the evidence and several reported decisions, is of frequent occurrence in such instruments. We conclude that there is nothing in the terms of the lease which requires that equitable relief be withheld.

While the complainants, as found by the Master, paid all the rental required by the terms of the lease and while they paid most of it in advance of the time stipulated, the first two payments were not seasonably made, and this is urged as a ground for refusing equitable relief. The objection is not well taken. The rental was not in arrears when the subsequent lease of August 9, 1906, was given, and there was no attempt at any time to forfeit or put an end to the lease because of the omissions to pay strictly in advance. While there was no provision in the lease for a forfeiture, the subject was covered by an Illinois statute. Hurd's Rev. Stat. of 1905, c. 80, § 8. Under it the lessor could have demanded the rent in arrears and have notified the complainants in writing that unless

payment was made within a time named in the notice,
not less than five days thereafter, the lease would be
terminated; and upon a failure to pay within that time
he could have treated the lease as ended. But there was
no such demand or notice, and consequently no failure
to comply with either. As interpreted by the Supreme
Court of the State, the statute confers upon a lessee who
omits to pay rent at the time it is due a right to cure his
default by paying at any time prior to demand and notice
or within the time named in the notice. *Chadwick* v.
*Parker*, 44 Illinois, 326; *Chapman* v. *Kirby*, 49 Illinois,
211; *Woods* v. *Soucy*, 166 Illinois, 407. Here the default
was cured in advance of any demand or notice and there-
after the complainants' rights were the same as if the
default had not occurred.

In the accounting Solley and his associates were charged
with the value, in the pipe line where the same was sold,
of all the oil taken by them from the premises, save the
one-eighth part going to the lessor as a royalty, and error
is assigned upon this because no deduction was made
for the cost of the improvements and operations whereby
the oil was taken from the earth and delivered at the
pipe line. As respects the cost incurred prior to August 1,
1907, we think the objection is well taken, for up to that
time Solley and his associates were in actual ignorance
of the earlier lease and were proceeding in the honest
belief that the later lease, assigned to them by Willett,
was the only one upon the premises. They paid a sub-
stantial sum for it, were let into possession by the lessor,
and were not conscious that they were invading the rights
of others. True, the prior lease had been properly re-
corded, but as they consulted an abstractor before con-
summating the transaction with Willett and were advised
that the title was clear, the constructive notice resulting
from the recording of the prior lease was not inconsistent
with an honest, though mistaken, belief on their part

that they had acquired a perfect right to take and dispose of the oil. But the expenses incurred after August. 1, 1907, are upon a different footing. On that date Solley and his associates were actually and fully informed of the prior lease and of the complainants' purpose to insist upon the rights conferred by it and to obtain redress for the invasion of those rights, so what was done thereafter cannot be regarded as anything less than a wilful taking and appropriation of the oil which was subject to the complainants' superior right. These views are amply sustained by our decisions. *Woodenware Co.* v. *United States,* 106 U. S. 432; *Benson Mining Co.* v. *Alta Mining Co.,* 145 U. S. 428, 434; *Pine River Logging Co.* v. *United States,* 186 U. S. 279; *United States* v. *St. Anthony Railroad,* 192 U. S. 524, 542. See also *Central Coal Co.* v. *Penny,* 173 Fed. Rep. 340; *Bender* v. *Brooks,* 103 Texas, 329; *Gladys City Oil Co.* v. *Right of Way Oil Co.,* 137 S. W. Rep. 171, 182.

We conclude that the decree in the Circuit Court was right save that the accounting should have proceeded along the lines just indicated, and those improvements the cost of which should have been deducted in the accounting, that is, those made before August 1, 1907, should have been awarded to the complainants.

The decrees below are reversed and the cause is remanded to the District Court, as successor to the Circuit Court, with directions that the accounting and the decree be conformed to the views herein expressed.

*Decree reversed.*