BELMONT QUADRANGLE DRILLING CORPORATION, Plaintiff, *v.*
MICHAEL GALEK and Another, Defendants.

Supreme Court, Schuyler County, July 30, 1930.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Mandeville, Waxman, Buck, Teeter & Harpending* of counsel], for the plaintiff, for motion.

*Olin T. Nye* [*Willis Bacon* of counsel], for the defendants, opposed.

PERSONIUS, J. The plaintiff is a domestic corporation, authorized to explore for, produce and sell oil and gas. In 1929 it made a geological survey of a large tract to determine the probability of finding oil and gas. It was an unexplored territory. Following the survey, it obtained leases on an extensive block of land, commenced drilling and found gas, apparently in large quantities.

The defendant Margarita Galek owned 160 acres in this tract, occupied by herself and her husband, the defendant Michael Galek. On October 15, 1929, they signed and delivered to the plaintiff a lease granting, among other things, all the oil and gas under the

land and " also said land for the purpose and with the exclusive right of drilling and operating thereon for said oil and gas." The lease was recorded December seventeenth. In addition to the down payment of one dollar, the receipt of which is acknowledged, the lease requires the lessee, plaintiff, to pay the defendants one-eighth of all oil produced and one hundred dollars per year, payable quarterly, for each producing gas well, and to give 150,000 feet of free gas for the defendants' use (or fifty dollars per year). If the lessee did not complete a well in one year, it was to pay a rental of forty dollars per year, payable quarterly, until a well was completed. Examination of the numerous authorities indicates that it was substantially a standard lease, such as has been used throughout the United States for many years.

Plaintiff found a gas pool apparently extending in the direction of the defendants' land. When the plaintiff attempted to drill on the defendants' land, the defendants prevented entry.

The plaintiff then instituted this action, alleging irreparable damage, for which it has no adequate remedy at law, and asks, among other things, that the defendants be enjoined from interfering with the plaintiff in its operations upon said property under said lease. By this motion it seeks an injunction *pendente lite.*

The defendants, admitting the lease, allege that it was obtained by fraudulent representations which are detailed later.

The defendants also allege that they " never received any value or any consideration " for said lease.

On or about May 29, 1930, the defendants gave another oil and gas lease (known as a " top lease ") on the same premises to Mr. Bacon (defendants' counsel) of Akron, Ohio, and on May thirty-first the defendants notified the plaintiff that its lease was terminated, null and void, for three reasons: (1) Fraud, (2) lack of consideration, (3) want of mutuality.

As to the consideration, was one dollar paid? The lease contains an acknowledgment that it was received. Mr. Mooney, plaintiff's agent, swears that he paid it. The lease is under seal which creates a presumption of consideration at least. (Civ. Prac. Act, § 342.) The defendants do not expressly say it was not paid. The answer and affidavit say they never received " any value or any consideration." Furthermore, and more important it seems to us, is their allegation that the plaintiff's agent said " that one dollar was all the money consideration paid down * * * for an oil and/or gas lease." Why were the defendants and the plaintiff's agent talking about this one dollar, if it was never paid? We think it was.

The defendants attack the consideration as unfair and insufficient

to support an action in equity. We think it is sufficient. In the absence of fraud (which we later discuss), inadequacy of the consideration does not destroy the obligation of the contract. (*Ga Nun* v. *Palmer*, 216 N. Y. 603, 609.) In *Guffey* v. *Smith* (237 U. S. 101, 116) the terms of the lease were almost identical, even in amount of rentals (p. 111). The court held that in view of the circumstances, not knowing whether the tract contained oil or gas (it being an undeveloped district), and the lessee being obliged to stand the large expense of drilling with the corresponding possibility of loss if unsuccessful, the consideration could not be pronounced unreasonable. (See, also, *Shaffer* v. *Marks*, 241 Fed. 139, 152, and *Lindlay* v. *Raydure*, 239 id. 928, at p. 936, where it is said: " So far as it is the consideration for the grant of the right to explore, it is for the right to incur the expense of the exploration, which may result in nothing.")

The defendants' principal argument is based upon the so-called " surrender clause " contained in the lease. It reads: " the lessee shall have the right at any time upon the payment of one dollar to surrender this lease to the lessor. * * * "

They say that this surrender clause (1) creates a want of mutuality, rendering the lease unenforcible in an action for specific performance, and (2) makes the lease unilateral and, therefore, invalid.

The answer to the first proposition is that this action is not for specific performance — to compel the defendants to do or perform anything. Rather it seeks to enjoin the defendants from doing anything. True, the prayer for relief asks, not only for an injunction, but that the " lease be specifically performed." This, however, is not controlling. (*Hydraulic Power Co.* v. *Pettebone Co.*, 198 App. Div. 644, 649, 650; *Guffey* v. *Smith*, 237 U. S. 101, 115; *Lindlay* v. *Raydure*, 239 Fed. 928; *McCall* v. *Wright*, 198 N. Y. 143, 152, 154; *Wright* v. *Gillespie*, 261 Fed. 46; *Epstein* v. *Gluckin*, 233 N. Y. 490.)

Does the surrender clause make the lease invalid? We think not. (*Lindlay* v. *Raydure*, 239 Fed. 928; affd., 249 id. 675; *Guffey* v. *Smith*, 237 U. S. 101; *McCall Co.* v. *Wright*, 198 N. Y. 143, 153, 154.)

In the *Lindlay* case the first lessee sued the second lessee; the owner intervened; therefore, the action was against both the owner and the second lessee to restrain them from interfering with the operations of the original lessee. District Judge COCHRAN, after thoroughly examining the numerous authorities in various States, concludes that the surrender clause does not invalidate the lease (239 Fed. 944, 975). The Federal courts determine the question by the law of the local State. The question has not been squarely

adjudicated in New York but we think that logically and by the great weight of authority the lease is valid.

Whatever the *nature* of the plaintiff's interest, it has a vested interest — a vested right — to go upon the land and explore. This right the plaintiff could enforce and protect. (*Shaffer* v. *Marks*, 241 Fed. 139, 153; *Guffey* v. *Smith*, 237 U. S. 101; *Lindlay* v. *Raydure*, 239 Fed. 928, 933.) We have here an executed contract. (*Becar* v. *Flues*, 64 N. Y. 518; *Lindlay* v. *Raydure*, 239 Fed. 928, 940.)

Bearing on the alleged fraud, defendants stress their alleged inability to readily understand and speak English. As to Mr. Galek, the contrary is fairly established by the affidavit of Pierre L. Harpending. Furthermore, the argument is immaterial. No claim is made that the lease as signed differed in the slightest from the understanding between the defendants and plaintiff's agent.

The defendants allege misrepresentations to the effect that the rentals provided in this lease were all that were being paid to any one, and that this was untrue. The claim of falsity is supported by no evidentiary allegation whatever — merely the verified conclusion of the defendants. It may be fairly inferred that better terms were offered after gas was found. Admittedly a lease was then more valuable, but the falsity of the representations (if made) cannot be established by what occurred thereafter. Plaintiff's agent deposes that the terms of this lease were the only terms that he was authorized to make and that he so stated to the defendants. A copy of this lease, complete, except for signatures, was left with the defendants. A little later Mr. Galek signed a similar lease on another farm. These leases must have been a live topic in the community, yet the defendants did not discover this fraud until nearly eight months later and after gas had been found. They did not discover it until the advent of certain emissaries, who admitted upon the argument that they were endeavoring to take advantage of and profit from the labor and expenditures of the plaintiff. These emissaries were both resourceful and ingenious in suggesting means to avoid plaintiff's leases, at no expense to the lessors. With this background, the allegations of fraud are not sufficiently convincing to warrant us in refusing plaintiff the right to go forward in its operations under its written contract.

Injunction is the proper remedy. (Civ. Prac. Act, § 877; *Lindlay* v. *Raydure*, 239 Fed. 928; *Shaffer* v. *Marks*, 241 id. 139; *Guffey* v. *Smith*, 237 U. S. 101, 113; *Saratoga, etc.*, v. *Pratt*, 227 N. Y. 429, 446, 447; *Wright* v. *Gillespie*, 261 Fed. 46; *Allegheny Oil Co.* v. *Snyder*, 106 id. 764; *Kentucky Coke Co.* v. *Keystone Gas Co.*, 296 id. 320.)

It is immaterial that the lessee did not sign. (*White* v. *Schuyler,* 31 How. Pr. 38; *Pettibone* v. *Moore,* 75 Hun, 461.)

We think a temporary injunction should be granted. The plaintiff has made out a *prima facie* case based upon a valid written lease. It has expended large sums in its operations. As to the defense shown on this motion, the plaintiff should succeed. To stop the plaintiff's orderly developments, to permit others to drill on the defendants' or adjacent land and remove oil and/or gas from under the defendant' land, to interfere with the performance by the plaintiff of its contracts, will produce injury and damage for which it would have no adequate remedy at law. It can neither measure the quantity nor calculate the value of any oil or gas removed. Gas is " migratory " and may be taken by drilling on adjacent land. A judgment granted after months of delay would be ineffectual. We do not think the defendants have made out a case for the virtual abrogation of this lease, at this crucial period of the plaintiff's developments. The damage to the defendants' farm, resulting from drilling, can be amply secured by a bond to indemnify the defendants whether a dry or producing well results. If it be a producing well, the defendants will have the advantage of such successful exploration. The courts favor relief which prevents a wrong in preference to that which may afford redress. (*Green Island Ice Co.* v. *Norton,* 105 App. Div. 331.) We think the defendants come within the rule laid down in *Cornwall* v. *Sachs* (69 Hun, 283), where it was said (p. 285): " The case is thus brought within the rule that where, upon balancing considerations of relative convenience and inconvenience, it is apparent that the act complained of is likely to result in irreparable injury to complainant, and the balance of inconvenience preponderates in his favor, the injunction will be granted. (High on Injunctions, §§ 5, 13.) "

The interest of the public in enabling the plaintiff to deliver gas to the company which has contracted to supply municipalities may be considered. (*McCann* v. *Chasm Co.,* 211 N. Y. 301, 306; *Hudson River Telephone Co.* v. *Watervliet Co.,* 56 Hun, 67, 72.)

Plaintiff's motion for temporary injunction is granted upon condition that it execute and file a surety company bond in the sum of $5,000, and serve a copy on the defendants' attorney, conditioned that the plaintiff will pay to the defendants such damages as the defendants may sustain if it is finally determined that the plaintiff is not entitled to such injunction. The order should also provide that if oil and/or gas are found on the defendants' premises and removed therefrom, they shall, pending the final determination of this action, be metered or otherwise measured before the same are

removed or mixed with other oil and /or gas, and that the defendants be permitted to inspect and read said meter or other measuring device at reasonable periods. The order should further provide that in the event that oil or gas are found and removed, the defendants may apply to the court for an increase in the amount of said bond.

Submit order.