## DUNAWAY *v.* GALBRAITH.

### Opinion delivered July 7, 1919.

OIL AND GAS—CONTRACT OF LEASE—MUTUALITY.—A covenant by A. to allow G. to drill on her land for oil and gas, and a covenant of G. in consideration therefor, to bring in a well within a year, and in case he failed to complete the well to pay a stipulated sum in advance as rental for the privilege of drilling for a well for another year, are mutual covenants, making the contract binding, the lease also providing that G. could surrender the lease at any time upon the payment of $25 to the lessor.

Appeal from Jefferson Circuit Court; *W. B. Sorrels,* Judge; reversed.

STATEMENT OF FACTS.

This is a controversy between Mrs. Maggie Dunaway, lessor, and R. M. Galbraith, lessee, from the Jefferson Circuit Court over an oil and gas lease. The lease reads as follows: "Agreement made and entered into the 24th day of February, A. D. 1913, by and between Maggie Dunaway of ——————, party of the first part, lessor, and R. M. Galbraith, party of the second part, lessee.

"Witnesseth: That the said party of the first part for and in consideration of the sum of $1 to her in hand well and truly paid by the party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part to be paid, kept and performed, has granted, demised, leased and let, and by these presents do grant, demise, lease and let unto the said second party, its successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of

laying pipe lines, and of building tanks, powers, stations and structures thereon to produce and take care of said products, all that certain tract of land situated in the county of Jefferson and State of Arkansas, described as follows, towit: 'South half south half southwest quarter and south half southwest quarter, southeast quarter section 19, east half northwest quarter and southwest quarter northwest quarter, section 20; all of section 30, in township 6 south, range 8 west; east half section 25, southeast quarter northwest quarter and east half southwest quarter section 25, township 6 south, range 9 west of 5th P. M. and containing 1,200 acres, more or less.

"It is agreed that this lease shall remain in force for the term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part, its successors or assigns.

"In consideration of the premises the said party of the second part covenants and agrees:

"*First.* To deliver to the credit of the first parties, her heirs or assigns, free of cost, in the pipe line to which it may connect its well, the equal one-eighth part of all oil produced and saved from the leased premises.

"*Second.* To pay to the first party $100 one year in advance from the gas from each well, where gas only is found, while the same is being used for the premises, and the first party to have gas free of cost from any such well, for all stoves and all inside lights for the dwelling house on said lands during the same time by making her own connections with the well.

'*Third.* To pay to the first party for gas produced from any oil well and used off the premises at the rate of $100 per year, for the time during which such gas shall be so used, said payments to be made each three months.

"The party of the second part agrees to complete a well on said premises within one year from the date hereof, or pay at the rate of $360 in advance for each additional 12 months such completion is delayed from the time above mentioned for the completion of such well

until a well is completed, and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease.

"The party of the second part shall have the right to use, free of cost, gas, oil and water produced on said lands for its operation thereon, except water from wells of the first party.

"When requested by first party, the second party shall bury its pipe lines below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn on said premises.

"Second party shall pay for damages caused by it to growing crops on said lands.

"The party of the second part shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"Party of the second part shall not be bound by any change in the ownership of said land until duly notified of any such change, either by notice in writing duly signed by the said parties to the instrument of conveyance, or by the receipt of the original instrument of conveyance, or by a duly certified copy thereof.

"All payments which may fall due under this lease may be made directly to Maggie Dunaway, Little Rock, Arkansas, or deposited to her credit in the Cotton Belt Savings & Trust Company office, Pine Bluff, Arkansas.

"The party of the second part, its successors or assigns, shall have the right at any time, on the payment of $25 to the party of the first part, her heirs or assigns, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine; provided this surrender clause and the option therein reserved to the lessee shall cease and become absolute and inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease, or any other person or persons. All convey-

ances and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators and assigns.

"Witness the following signatures and seals.

"Maggie Dunaway,

"R. M. Galbraith."

"C. B. Maxwell,

"J. J. Schmultz."

R. M. Galbraith paid the installment of·rent due on the 24th day of February, 1914, but did not make any further payment to Mrs. Dunaway. Galbraith did not at any time complete an oil well on the premises embraced in the lease. He did not pay to Mrs. Dunaway any sum of money for the cancellation of the lease, nor did he ever surrender said lease for cancellation. Mrs. Dunaway sued him to recover $1,080 and the accrued interest alleged to be due her as rent under the terms of the lease.

Galbraith defended on the ground that the contract was void for want of mutuality.

The court sustained the contention of Galbraith and Mrs. Dunaway has appealed.

*Mike Danaher* and *Palmer Danaher,* for appellant.

The contract is not unilateral and therefore void. The contract did bind the defendant and formed a valid consideration for the rent or lease (citing clauses from the lease). Galbraith in the contract promised to dig an oil well or pay the stipulated rent. He did neither. The land was subject to his lease during the entire stipulated term, and he should pay what he promised. The cases cited by appellee are all taken from cases cited in L. R. A. 1917 B., p. 1184. The excerpts from these cases are all misleading; they are not this case. The dissenting opinion in that case by Kane, C. J., states the law of such contracts and this case. The "unless" lease by its terms confers upon the lessee the option to continue or renew by paying rental. The payment of rental is a necessary condition precedent to the renewal. In fact, it is a lease from year to year or quarter to quarter. Under the "or"

lease (with surrender clause) the lessor may waive default and recover rentals, the lessor being bound until the lessee surrenders. L. R. A. 1916 B. 686; 150 Pac. 467; 23 Okla. 776; 101 Pac. 1116; 44 L. R. A. (N. S.) 51.

*Irving Reinberger* and *Maurice L. Reinberger,* for appellee.

The lease is void because it is unilateral and lacks mutuality. The $1 consideration was paid for the option to drill a well within one year and the real consideration was the drilling of an oil well on the premises. L. R. A. 1917 B. 1184; 67 S. W. 545; 168 *Id.* 192; 132 La. 601; 119 *Id.* 703; 34 S. E. 923; 96 Ark. 188. See also *Weil* v. *Chicago etc. Tool Co.,* 138 Ark. 534.

HART, J., (after stating the facts). The trial court seemed to have been of the opinion that the lease comes within the principle of law that, when it is provided that it is terminable at the will of one of the parties, it is terminable at the will of the other. This construction undertakes to divide the lease into independent parts. We are of the opinion that the lease constituted an entire contract. According to the settled rule of construction, all parts of it must be given effect, if possible, and the intention of the parties must be gathered from the four corners of the instrument. Mrs. Dunaway leased to Galbraith 1,200 acres of land for the sole purpose of mining and operating for oil and gas. She agreed that the lease should remain in force for five years from date and as long thereafter as oil or gas should be produced therefrom by Galbraith or his assigns. In consideration therefor Galbraith agreed to complete a well on the premises within one year or to pay a rental in advance at the rate of $360 per annum for the privilege of extending his time for drilling and bringing in a well on the premises. Section three of the contract further provides that the completion of such well shall operate as a liquidation of all rent under this provision during the remainder of the term of the lease.

Under a subsequent provision of the contract Galbraith reserved the right to surrender the lease for cancellation upon the payment of $25 to Mrs. Dunaway. The parties were capable of contracting and were contracting about a matter which was the legal subject of a contract. The covenant of Mrs. Dunaway to allow Galbraith to drill on her land for oil and gas, and the covenant of Galbraith in consideration therefor to bring in a well within a year, and in case he failed to complete the well to pay a stipulated sum in advance as rental for the privilege of drilling for a well for another year are mutual covenants which prevent the contract from being unilateral. Each imposed a legal liability upon the party making it, and thus prevented the contract from being void for want of mutuality. The parties did not insert any forfeiture clause in the contract. The contract, however, does contain a clause allowing the lessee the privilege of surrendering the lease for cancellation at any' time upon the payment of $25. The land was unexplored for oil or gas. This clause was for the benefit of the lessee, so that in case he did not discover oil or gas, or for some other reason should find it to his interest not to continue as lessee, he could terminate the lease by paying the stipulated amount. The payment of $25, the amount fixed for relieving the lessee from the necessity of continuing with the lease, is a substantial sum and not a mere nominal consideration; and, when construed with the other covenants, it sustains the entire lease; for Mrs. Dunaway gave Galbraith the right to explore her lands for oil or gas and Galbraith obligated himself to complete a well on the land, or pay in lieu thereof $360 in advance as delay money, or to pay $25, a substantial sum, to be relieved from the necessity of continuing with the lease. Thornton on the Law of Oil and Gas (3 ed.), vol. 2, sec. 899; *Beebe* v. *St. Louis Transit Co.*, 12 L. R. A. (N. S.) 765; *Brewster* v. *Layton Zinc Co.*, 72 C. C. A. 213, 140 Fed. 801; *Houssiere Latreille Oil Co.* v. *Jennings-Heywood Oil Syndicate*, 115 La. 107, 38 Sou. 932, and case note to L. R. A. 1917 B. 1206 *et seq.* In so holding

we have not overlooked the opinion of the majority in
*Brown* v. *Wilson* (Okla.), L. R. A. 1917 B. 1184. That
case is distinguished from the case at bar in that the con-
sideration for the surrender clause was a mere nominal
consideration. But, inasmuch as we do not approve the
reasoning of the majority in that case, we decline to fol-
low it, and for the reasons given above, are of the opin-
ion that the contract in the present case is not void for
want of mutuality, and that the circuit court erred in so
holding.

It follows that the judgment must be reversed and
the cause remanded for a new trial.