## LAWRENCE v. MAHONEY
### AND
## McDONALD v. LEWIS.

## Opinion delivered October 11, 1920.

1. MINES AND MINERALS—OIL LEASE NOT UNILATERAL.—An oil and gas lease reciting a consideration of $1 and an agreement by the lessee to drill a well within a stipulated time, which allowed the lessee to extend the time on payment of a small sum per acre, and provided for further payments in case oil or gas should be discovered, is not void for want of mutuality because the lessee could abandon the premises without doing any drilling.

2. EVIDENCE—PAROL AGREEMENT TO VARY WRITTEN CONTRACT.—As the terms of a written contract can not be varied by parol, a written oil and gas lease can not be declared void for failure of the lessee to carry out an oral promise as to drilling.

3. MINES AND MINERALS—OIL LEASE—FRAUD.—An oil and gas lease entered into by persons dealing at arm's length will not be held invalid on account of fraud where the provisions alleged to be

fraudulent were fully and clearly expressed and show that the lessors fully understood all the circumstances surrounding the execution of the contract.

4. MINES AND MINERALS—ASSIGNMENT OF OIL AND GAS LEASE.— Where an oil and gas lease contained no covenant against subletting, it may be assigned by the lessee.

5. FRAUD—PROMISSORY REPRESENTATIONS.—An action of fraud does not lie for failure on the part of the promissor to perform a promise made by him to do something in the future which he does not intend to do, and subsequently refuses to do, though the promisee has acted in reliance on such promise.

6. ACKNOWLEDGMENT—TAKING BY INTERESTED NOTARY.—Though a notary public who took an acknowledgment to an oil and gas lease was interested in the lease, yet where his interest does not appear on the face of the instrument, and there is no claim that he exercised any undue influence or coercion, the acknowledgment is valid.

Appeals from Union Chancery Court; *T. J. Gaughan*, Special Chancellor; affirmed.

### STATEMENT OF FACTS.

In the cases of *Paul Lawrence and Vivian Lawrence* v. *J. K. Mahony, Trustee,* and *J. L. McDonald and Effie McDonald* v. *J. H. Lewis, Trustee, and W. E. McRae, Trustee,* the issues are the same and one opinion will suffice for both cases. In each case the appellants brought a suit in equity against the appellees to cancel and set aside a certain written agreement which had been executed by the parties. The terms of the agreement are the same in each case, and we will therefore only set out the contract in the case of Paul and Vivian Lawrence against J. K. Mahony, Trustee. It is as follows:

"Know all Men by These Presents: That we, Paul Lawrence and Vivian Lawrence, husband and wife, parties of the first part, for and in consideration of the sum of one ($1) dollar to us in hand paid by J. K. Mahony, Trustee, part...... of the second part, the receipt of which is hereby acknowledged, do hereby bargain, grant, sell and convey unto the said part...... of the second part and unto their successors, heirs, and assigns, all of the oil, gas,

sulphur and other minerals, in and under the following lands, together with the rights of ingress and egress at all times for the purpose of drilling, mining and operating for oil, gas, sulphur and water and other minerals and to conduct all operations to erect such storage tanks and other necessary structures, and to lay all pipe lines necessary for the production, mining and transportation of oil, gas, water and sulphur, with the right to use sufficient water, wood, gas or oil from said premises to develop the same, with the right, at all times, not only to install, maintain and operate all machinery, fixtures, storage tanks, pipe lines or other means of operation, storage or transportation deemed necessary or convenient for the proper development of the property, but with the right also, at all times, to remove any or all of the same therefrom, including the right to pull and remove pipe from the ground; reserving, however, to the part...... of the first part, the equal one-eighth royalty or share of all oil produced and saved upon the premises, to be delivered at the well, or in gauge tanks, on the premises or to credit of the lessor in the pipe line to which the well may be connected, at the option of the lessee, but free of cost to first parties.

"If gas only is found, second part...... agree to pay first parties ........................... dollars per year payable quarterly, for the product of such well producing gas exclusively while the same is being used off the premises, such payments to be made at the end of each quarter; and the first party, by furnishing their own pipe connection, shall have sufficient gas, FREE OF COST, for use at their own risk, in one dwelling house on the premises, so long as the gas is utilized off the premises. Second part...... shall have the right to use, free of cost, either on or off the premises, any surplus gas from oil wells. No well shall be drilled within 200 feet of any building, now on said premises without the consent of said first part......; said lands being situated in the county of Union, State of Arkansas, and described as follows, towit: West half of southwest quarter, section 29, township 16, range

16, 80 acres; southwest quarter of northeast quarter, section 29, township 16, range 16, 40 acres, containing 120 acres, more or less.

"To have and to hold the above described premises unto the said party of the second part, successors, heirs and assigns, on the following conditions: In case operations for drilling of a well for oil or gas are not commenced and prosecuted with due diligence within one year from this date, then this grant shall immediately become *ipso facto* null and void as to both parties; provided, however, that second part............ may thereafter prevent such forfeiture, from quarter or from year to year as they may elect for five additional years, by paying or tendering to the first party quarterly or annually as they elect, the sum of 10 cents per acre dollars in advance, until operations for drilling of a well are commenced; and provided, further, that, after operations for the drilling of a well for oil or gas shall have been begun on said land, it shall not be necessary for the part............ of the second part to make any further payments in order to keep said lease contract in full force and effect; and during the period of this lease drilling operations may be suspended from time to time without terminating this lease, upon the part............ of the second part paying to party of the first part all rentals as herein stipulated; and it is agreed that the completion of a well shall operate as full liquidation of all payments under this provision during the remainder of the term of this grant. The payments herein referred to may be made, at the option of the part............ of the second part, to part............ of the first part by mailing check to Paul Lawrence at Lisbon, Ark., of Union County, Arkansas, or by depositing same to the credit of Paul Lawrence in the Citizens National Bank of El Dorado, Ark., which said bank shall remain as the depositary of first part............, heirs and assigns during the life of this grant; and it is further agreed and understood that said rentals may be deposited in said bank without reference to any change in the ownership of

said property unless, prior to the expiration of any rental period, thirty (30) days' written notice be given to part............ of the second part of any change in the ownership of said property.

"It is further agreed and understood that, in the event party of the second part should drill a well or wells on said property not producing oil or gas in paying quantities, then it shall have the right to make as many additional attempts to find oil or gas as it may determine; or, in the event part............ of the second part should not elect to do further drilling, then, and in that event, it shall have the right of resuming the rental payments as stipulated in this contract, to be computed from the time of the suspension of drilling operations; it being fully agreed and understood that no payments are to be made during the drilling operations, if the same are carried on in good faith.

"It is further expressly agreed and understood that the consideration, paid in cash, as recited in the first paragraph of this contract, and the other obligations of grantee shall be held to support and sustain, not only the privileges granted to the date stipulated, namely, the date when this lease is to terminate unless drilling operations are commenced, or additional payments are made, but also lessee's option of extending that period from time to time and keeping this lease in force, as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this contract.

"If the interest of the owner in said lands shall prove to be less than the entire fee, then the royalties and moneys herein provided for shall be delivered or paid to the lessor in the proportion only that the interest of the lessor bears to the entire fee.

"In case the part............ of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance, or conveyance, shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas

may be produced in paying quantities thereon; the part......
of the second part binding itself, after above discovery.
of oil or gas in paying quantities, to prosecute diligently
the work of production of oil or gas and deliver the one-
eighth of the oil as above provided and the payment of
one hundred and fifty dollars per annum for gas (if a
gas well) as above provided.

"This grant is not intended as a mere franchise, but
is intended as a conveyance of property above described
for the purpose herein mentioned, and it is so under-
stood by both parties to this agreement.

"And I, Vivian Lawrence, wife of the said Paul Law-
rence, for and in consideration of the said sum of money,
do hereby release and relinquish unto the said part...........
of the second part all my right of dower and homestead
in and to said lands, that is to say, to the extent of the
rights, privileges and franchises hereinbefore granted.

"It is understood between the parties to this agree-
ment that all conditions between the parties hereunto
shall extend to their heirs, executors, administrators,
successors and assigns."

The contract was duly signed and acknowledged by
Paul Lawrence and Vivian Lawrence on the 21st day of
April, 1919.

The chancery court sustained a demurrer to the
complaint in each case and dismissed it for want of
equity.

The cases are here on appeal.

*J. W. Warren* and *J. B. Moore,* for appellants.

1.    The demurrer admits the truth of every material
allegation in the complaint; (1) that the $1 consideration
recited was not paid nor agreed to be paid; (2) that the
sole consideration for the lease was defendant's repre-
sentations and assurances that the lease was not sought
for resale or speculative purposes but for development
for plaintiff's benefit of the oil and gas in the lands and
his promise that he would cause the drilling of a well for
oil and gas to begin within sixty days from the date of

the lease; (3) that no well was begun or steps taken within the sixty days; and (4) that defendant's representations and promises were false and fraudulent; and (5) that at the time the complaint was filed it had become impossible to begin drilling operations within the year; and (6) that plaintiffs relied on these false representations and promises; (7) that the west half southwest quarter of section 29 was and is now the homestead of plaintiffs; that Riddle, who attempted to take the acknowledgment to the lease, was one of the persons for whose benefit the lease was taken, being a partner with defendant and others procuring the lease for their own benefit; (9) that the rights conveyed were fully worth $600, and (10) that defendant is asserting title in himself and offering to sell, and will sell if not prevented, the oil and gas rights. These allegations are all admitted. Plaintiffs do not allege a total want of consideration, but they deny the truthfulness of the one recited and offer to prove the real consideration; this they can do. 1 Elliott on Ev., § 582. The real consideration can be proved, though it varies or contradicts that recited in an instrument of writing. 15 Ark. 275; 82 *Id.* 492; 75 *Id.* 89; 113 *Id.* 519. The real consideration may be proved. 55 *Id.* 112. The $1 was not paid even, and defendants can not lean on it for support. Thornton, Oil & Gas, § 797. The real consideration was the development of the property. L. R. A. 1917 B, 1184; 67 S. W. 545; 74 *Id.* 111. The lease is void for want of mutuality. *Supra;* 72 S. W. 603. The lessee must begin operations within a reasonable time. 48 L. R. A. 320. See, also, 202 Fed. 109; 114 S. W. 33.

2. The land was a homestead, and the wife did not join nor acknowledge the lease. Kirby's Digest, § 3901. Riddle, being interested, could not take the acknowledgment. 43 Ark. 422; 68 *Id.* 162-5-6; 70 *Id.* 309; 56 *Id.* 511-13-14; 121 *Id.* 498, 507.

3. The allegations set forth show fraud and deceit and that appellants were deluded and deceived and procured by fraudulent misrepresentations and a constructive trust arises. Kirby's Digest, § 3667. And appel-

lee took undue advantage of appellants and a constructive trust arises in favor of appellants, who, are entitled to the oil and gas developed on their lands. 3 Pom., Eq. Jur., § 1053, p. 2033; 73 Ark. 310-12-13; 113 Ark. 509-14. A trust should be declared in favor of appellants. 21 A. & E. Enc. Law 1091. The lease imposes no obligations on appellee and is void for want of mutuality. And operations should have been commenced within a reasonable time. The lease is void as being repugnant to the provision fixing the automatic annulment of the contract. The provisions for the payment of rents are ineffective and null and void. The chancellor erred in sustaining the demurrer, and it should be reversed because a fair and correct interpretation of the contract reveals it to be without any valuable consideration in a court of equity, notwithstanding the falsely recited payment of one dollar as the consideration for rights of the alleged value of $600. The contract is flagrantly unilateral and null and void for want of consideration, and it was procured by misrepresentations, fraud and deceit, and the attempt of Riddle, a party in interest, to certify the acknowledgment of Vivian Lawrence.

*W. K. Lemley* and *Graves & McFadden,* for appellants.

The lease should be canceled; (1) because it is unilateral and void; the $1 mentioned as the consideration is purely nominal, which will not support the contract, as there are no agreements on part of the lessee to develop the property or pay rentals except at his own option; (2) because the lessee can surrender it any time without consulting the lessors and without paying them any consideration, and, being terminable at will of the lessee, it is terminable at the will of the lessors also, and they have elected to terminate it; (3) the lease is unjust, unfair and unconscionable and equity should cancel it. 214 S. W. 33; 216 *Id.* 1049. The cases in 97 Ark. 167 and 114 *Id.* 19, are not in point to sustain the contention that there is an implied agreement for development which the court will read into the lease to sustain it and render

it mutual. 114 La. 903; 38 So. 253; 106 Fed. 764. The consideration must be of value, or it is *nudum pactum* and void for want of mutuality. 151 Ala. 207; 86 N. E. 200; 97 Ark. 170. Such leases are construed most strictly against the lessee and favorably to the lessor. 83 Va. 547; 89 Tenn. 381. See, also, 47 W. Va. 84; 34 S. E. 933; 114 La. 903; 134 *Id.* 701; 132 *Id.* 601; 131 Fed. 696; 116 S. W. 728; 80 S. W. 1770; 97 S. W. 383; 86 *Id.* 558; 21 L. R. A. 127; 180 S. W. 46; 217 *Id.* 666; Donohoe on Petroleum and Gas, 155-6; 151 Ala. 207; 4 Gill (Md.) 472; 112 Fed. 373; 121 *Id.* 674. Every lease must have a consideration or it is void. 1 Thornton on Oil and Gas 114, and cases cited. *Ib.* 115-118-128. One dollar and rental thereafter, if oil or gas is discovered, is sufficient consideration for a lease. 76 Kan. 42; 1 Thornton, Oil and Gas, 115. See, also, 109 S. W. 192; 74 S. W. 590; 67 *Id.* 545; 156 *Id.* 557. The lessors have a reciprocal right to abandon the lease at all times. 91 U. S. 587; 86 Ark. 489; 80 Pa. St. 142.

*Powell & Smead,* for appellees.

The consideration of $1 was sufficient and the lease was not wanting in mutuality. 140 Fed. 807, and cases cited; 12 L. R. A. (N. S.) 745; 6 Cyc. 604-6; 137 U. S. 159. One dollar and part of the oil and gas developed is a sufficient consideration for the lease. 25 Okla. 409; 26 *Id.* 772; 29 *Id.* 719; 241 Fed. 139; Thornton on Oil and Gas (3 ed.), § 136. The lease is not void for want of mutuality. Cases *supra;* 21 Cyc.. 928; 9 S. W. 195; 35 W. Va. 735; 51 Pac. 853; 32 N. E. 802. See, also, 97 Ark. 167; 114 *Id.* 411; 138 *Id.* 367. The lessor can not defeat the lease by proof that the $1 was not paid. Where a deed recites a valuable consideration, parol evidence is inadmissible to prove there was no such consideration. 54 Ark. 195; 71 *Id.* 494; 75 *Id.* 89; 108 *Id.* 357; 113 *Id.* 509; 125 *Id.* 331. Parol evidence is inadmissible to qualify or add to the lease. 113 Ark. 509. The demurrer does not admit any alleged fact not legally susceptible of proof. 72 Ark. 119; 129 *Id.* 346; 121 S. W. 353; 24

L. R. A. (N. S.) 735 and notes. The consideration was sufficient. 237 U. S. 101.

HART, J. (after stating the facts). The contract under consideration in this case is commonly called an oil and gas lease. For a consideration of $1 in hand paid to the lessor by the lessee as recited in the contract between the parties, the lessor grants to the lessee all of the oil and gas in and under 120 acres of land, together with the rights of ingress and egress, for the purpose of drilling and operating for oil and gas and to lay all pipe lines necessary for the transportation of it, reserving to the lessor one-eighth royalty or share of all oil produced upon the premises; to have and to hold said lands unto the lessee upon the following conditions: In case operations for the drilling of a well for oil are not commenced and prosecuted with due diligence within one year from date, the grant shall immediately become null and void, provided, however, that the lessee may prevent such forfeiture from year to year, for five additional years, by paying the sum of ten cents per acre dollars in advance until the operations for the drilling of a well are commenced.

Counsel for appellants seek to reverse the decree on the ground that the contract is void for want of mutuality. They insist that the $1 recited as a consideration is a purely nominal sum which will not support the contract, inasmuch as it is optional with the lessee to drill an oil well.

Again, they contend that the lease is unilateral and void for the reason that the lessee can surrender the same at any time without the consent of the lessors and without paying them a consideration for so doing. Cases are cited from the courts of last resort of several other States, which directly support their contention. Counsel also cite the case of *Dunaway* v. *Galbraith,* 139 Ark. 580, in support of their contention. We can not agree with counsel in this respect. The language of an opinion must be read and considered with reference to the issue

involved in the appeal. In that case the contract contained a clause allowing the lessee the privilege of surrendering the lease for cancellation at any time upon the payment of $25. The court held that this was a substantial sum and not a mere nominal consideration, and that, when construed with the other covenants, it sustained the entire lease. Therefore, the question now at issue was not decided by the court in that case, and was not necessary to a decision of the case. It is worthy of note, however, that the court disapproved in that case the majority opinion in *Brown* v. *Wilson* (Okla.), L. R. A. 1917 B, p. 1184, which is the leading case cited by counsel for appellants in favor of their position. For a like reason, the opinions in the cases of *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 167; *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419, and *Sullivent* v. *Clear Creek Oil & Gas Co.,* 138 Ark. 367, are not authorities for the position taken by counsel for the appellees. It is true that in each of these cases the consideration recited in the deed was $1, but the question now at issue was not argued or considered by the court in those cases. The decision in each case turned upon other points, and the question now presented was not decided. The courts of last resort of several States have sustained leases essentially the same in terms as the ones now under consideration. The reason for so doing is well expressed by the Supreme Court of the United States in *Guffey* v. *Smith,* 237 U. S. 101. That case was appealed to the Supreme Court of the United States from the Supreme Court of the State of Illinois. We quote at length from that opinion, because it contains the substance of the reasoning of the courts of last resort which have sustained leases of essentially the same terms as the ones in the case at bar. In discussing the question, the court said:

"Another contention of the defendants is that the lease is so unfair and inequitable in its terms that relief in equity should be withheld and the complainants left to seek remedy at law, which is tantamount to saying

that they must submit to the practical destruction of their leasehold and accept such reparation as may be obtained through recurring actions for damages. Whether the lease is unfair and inequitable must be determined in view of the circumstances in which it was given. *Willard* v. *Tayloe,* 8 Wall. 557, 570, 571; *Marble Co.* v. *Ripley,* 10 Wall. 339, 357; *Franklin Telegraph Co.* v. *Harrison,* 145 U. S. 459, 473. They were these: Whether the leased tract contained oil or gas was not known. It was in an undeveloped district in which there was no oil or gas well and no pipe line leading to a market. Drilling wells was attended with large expense, the cost of each well being upward of one thousand dollars, according to the testimony of one of the defendants. No fraud, deception or overreaching was practiced in procuring the lease. The parties were competent to contract with each other and entered into the lease because in the circumstances its provisions were satisfactory to them. Under its terms the cost of the drilling was to be borne by the lessee. If the undertaking was unsuccessful, he alone was to stand the loss; and if it was successful, the lessor was to share in the results by receiving substantial royalties, the reasonableness of which is not questioned. The consideration for the lease, viz., one dollar paid to the lessor and the covenants and agreements of the lessee, can not be pronounced unreasonable. Similar leases resting upon a like consideration often have been sustained in cases not distinguishable from this. The lease was to remain in force five years and as much longer as oil or gas was being produced from the premises; in other words, it was to expire in five years unless oil or gas was produced within that time. The lessee expressly covenanted to drill a well within nine months or to pay a rental of twenty-five cents per acre per year quarterly, in advance, for such time as the completion of the well was delayed beyond that period, the delay, of course, not to extend beyond the primary term of five years. The terms of the covenant

doubtless were suggested by the undeveloped condition of the district and by the expense and risk incident to exploring for oil and gas. They evidently were satisfactory to the lessor at the time, and the record discloses no reason for holding that in the circumstances they were unreasonably liberal to the lessee. Some criticism is directed against the reserved option to surrender, but it is difficult to perceive how it could be declared inequitable. If it was not exercised, the lessee would be bound by his covenants, and if exercised the lessor would be free to deal with the premises as he chose. A surrender was not to affect any existing liability, but only to avoid those 'thereafter to accrue.' A like clause is in the subsequent lease, and, according to the evidence and several reported decisions, is of frequent occurrence in such instruments. We conclude that there is nothing in the terms of the lease which requires that equitable relief be withheld.'' See also *Rich* v. *Donaghey,* 3 L. R. A. 352, and case note commencing at p. 378.

Nothing can be added to the reasoning of the opinion quoted from above. We deem it sufficient to adopt it as the reasoning of this court in the present case, for neither the land in question, nor any of the surrounding country had been explored for oil and gas. The business of drilling or boring wells for oil and gas is risky and uncertain as well as very expensive. The lessor does not share any of the risks and expense of boring the wells. He does share, however, in the profits in case the drilling is successful. Therefore all these matters, together with all the other attendant circumstances, are proper to consider in determining whether the consideration recited in the lease contract is adequate.

The complaint alleges that the lessee agreed with the lessor to commence drilling for oil and gas within sixty days from the date of the lease contract, and that he has failed to do so. Counsel for appellants earnestly insist that this renders the contract void, and that the

chancery court therefore erred in sustaining a demurrer to the complaint.

It will be noted that counsel for appellant did not seek to amend the lease contract in this respect. They seek no reformation of the contract, but only contend that the contract is void because the lessee did not carry out his promise to the lessors in the respect named. It is well settled that parties can not add to or vary the terms of a written contract by parol evidence. It is manifest that, if the lessors should be allowed to go to trial and prove this allegation of the complaint, they would impose obligations in the contract which are not now recited in the written instrument. The written instrument is complete in itself and embodies the last expression of the parties with regard to the matters contained in it.

It is also earnestly insisted that the contract should be avoided on the ground of fraud. There are no allegations in the complaint to support this contention. It is not alleged that appellee procured appellants to sign the contract by any false representations made as a matter of inducement to its execution. The parties were dealing at arm's length with each other and were fully capable of entering into any kind of a contract they saw fit to make. They understood all of the attendant circumstances. That they did so is shown by the language of the contract itself. In the contract we find the following: "It is further expressly agreed and understood that the consideration, paid in cash, as recited in the first paragraph of this contract, and the other obligations of the grantee shall be held to support and sustain, not only the privileges granted to the date stipulated, namely, the date when this lease is to terminate unless drilling operations are commenced, or additional payments are made, but also lessee's option of extending that period from time to time and keeping this lease in force, as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this contract." This shows that the lessors fully understood all the circumstances surrounding the execution of the contract and

the uncertainty and risk attending the drilling of oil and gas wells.

Finally, it is insisted that the contract is void because the lessee at his option might assign his lease contract to another without attempting to drill for oil or gas. The lease does not contain any covenant against subletting, and, in the absence thereof, the lessee has the right to assign his lease.

It follows that the decree in each case must be affirmed.

### OPINION ON REHEARING.

HART, J. It is earnestly insisted by counsel for appellant that the court erred in not setting aside the lease on the ground of the alleged fraudulent representations made by the lessee to procure its execution. It is claimed that the lessee's agents represented to the lessors that said lease was not taken for the purpose of speculation or for resale, but that its execution was sought solely to develop the property and explore it for oil and gas and that the lessee would commence operations within sixty days.

It was further alleged that the lessors relied upon said representations and promises and were thereby induced to execute the lease in question.

In the case at bar there was no covenant in the lease against subletting, and, therefore, the lessee had a right to assign the lease. The lease contract, also, fixed the time within which the lessee had a right to bore for oil and gas. The promise of the lessee, therefore, that the lease contract would not be assigned and the operations would be commenced within sixty days after the execution of the contract were a mere expression of the intention of the lessee to commence work within that time and were promissory in character. The contract must speak for itself through the terms written in it, and representations of intention or promises having reference merely to the future constitute no ground of action. An action of fraud does not lie for failure on the part of the promisor to perform a promise made by him to do some-

thing in the future, which he does not intend to do and subsequently refuses to do, although the promisee has acted in reliance on such promise. *Conway* v. *Newman,* 91 Ark. 324; *Harriage* v. *Daley,* 121 Ark. 23, and *Harris* v. *Trueblood,* 124 Ark. 308.

Again it is contended that the court erred in not holding the lease void because the notary who took the acknowledgment was beneficially interested in the lease, and the land described in the lease constituted the homestead of the lessors. The authorities on this question are in conflict, but this court has already taken a position on the question adverse to that contended for by counsel for the plaintiffs.

In *Davis* v. *Hall,* 114 Ark. 426, the court held that where a deed of trust is given to secure a valid debt and no fraud was alleged or proved as to its execution, and no coercion or undue advantage taken of the parties executing the trust deed, either by the officer taking the acknowledgment or the lender of the money, the acknowledgment will not be held invalid because the lender was a corporation and the notary taking the acknowledgment was a stockholder thereof. That case rules the present one. It is true that it alleged in the complaint that the notary who took the acknowledgment of the lessee to the lease was beneficially interested in the lease and that the land embraced in the lease constituted the homestead of the lessors, but the interest of the notary does not appear on the face of the deed. There are no allegations in the complaint to the effect that the notary in person, or in connection with others, used any coercion or any undue influence against the lessees to induce them to sign the lease. The parties dealt at arm's length with each other and the complaint contains no allegations of any fraud perpetrated by the notary to induce the lessors to sign and acknowledge the lease.

Therefore, we think the acknowledgment was not void, and that there was a valid lease of the homestead for the purpose of exploiting it for gas and oil within the terms defined in the lease contract.