ROGERS *v.* MAGNOLIA OIL & GAS COMPANY.
CRAIN *v.* MAGNOLIA OIL & GAS COMPANY.

## Opinion delivered December 4, 1922.

1. MINES AND MINERALS—VALIDITY OF OIL AND GAS LEASE.—Where purchasers, under an executory contract, were present at the time of the vendor's execution of an oil and gas lease, and expressly agreed with the lessee that the vendor should execute a lease in his own name and collect the rentals, the subsequent conveyance of the land pursuant to such contract did not constitute a revocation of the purchaser's agreement that the vendor. should be authorized to collect the rentals.

2. MINES AND MINERALS—TENDER OF INSTALLMENT OF RENT.—Where a lessor commenced suit to cancel an oil and gas lease, it was unnecessary for the lessee to tender payment of an installment subsequently due in order to avoid a forfeiture, since the commencement of the action was tantamount to a refusal in advance to accept such installment.

3. MINES AND MINERALS—SUFFICIENCY OF DESCRIPTION IN OIL AND GAS LEASE.—A lease describing the land by section, township and range, in accordance with the public survey, is sufficient to identify the land without mentioning the county and State in which it is situated.

4. EVIDENCE—JUDICIAL NOTICE.—Courts take judicial notice of public surveys and of county lines.

5. MINES AND MINERALS—SURRENDER CLAUSE—MUTUALITY.—Where an oil and gas lease recited a consideration of one dollar and "the further consideration hereinafter mentioned" and required the lessee to commence operations within one year or extend term of lease by payment of a specified rent, a provision entitling the lessee to cancel the lease at any time, and providing that, on the exercise of the right of surrender, "this contract and all liabilities and payments under it, from and after such time, shall cease and determine," *held* not void for lack of mutuality, since such provision was not separable from the other provisions of the contract, and therefore was supported by the original consideration of the contract.

Appeal from Columbia Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

*Joe Joiner,* for appellant.

The lease is void for uncertainty in description. 30 Ark. 657; 3 Ark. 18.

Appellee had knowledge that a part of the land had been sold to J. G. and M. A. Rogers without a reservation of rents or royalties yet continued to pay rentals to Jno. D. Rogers. The purchasers were entitled to the rentals on their land, but no tender or payment of same was made to them. 103 Ark. 175. 1 Thornton on Oil and Gas, p. 404. Such rentals must be paid in advance, else there is a forfeiture. 225 S. W. (Ark.) 45. The lease is unilateral and void, as no consideration is provided for a surrender of the lease and a release from existing liability. See 234 S. W. 501; 214 S. W. 33. See note in 3 A. L. R. 352.

*McKay & Smith,* for appellee.

A mutual mistake was made in omitting the State and county from the lease, and such mistakes may be reformed as to the parties to the contract. However the recital in the lease "under and by virtue of the homestead and redemption laws of the State of Arkansas" fixes the State. The description by section, township and range is sufficient to show that Columbia County was intended and could not be any other county in Arkansas. See 35 Ark. 470. The lease is not unilateral, because no payment is provided for surrender. The consideration paid for the lease extends to the whole contract and was sufficient. 145 Ark. 310; 237 U. S. 101; 3 A. L. R. 378.

McCulloch, C. J. These two cases are separate and distinct, but, having been submitted at the same time and involving the same principal question, we will dispose of both of them in one opinion. They involve the validity of oil and gas leases, identical in form and substance, executed by the respective appellants.

In the Rogers case the lease was executed by appellant John D. Rogers, and he later conveyed fifty acres of the leased lands to his coappellants, M. A. Rogers and J. G. Rogers, and it is contended that, by reason of the fact that the rentals were not paid in accordance with the terms of the contract, there was a forfeiture by appellee of all of its rights.

In the Crain case the lease was executed by D. B. White and his wife, the then owners, to appellee, and the lessors subsequently sold and conveyed the land to appellant Crain, and it is contended that there was a forfeiture by reason of failure to pay rentals.

The controversy with regard to the payment of rentals relates entirely to questions of fact, and is determined upon the weight of the evidence.

In the Rogers case the evidence justified the finding that appellants, M. A. Rogers and J. G. Rogers, were present at the time of the execution of the lease by John D. Rogers, there having been a previous executory contract on the part of the latter to convey the land to the former, who expressly agreed with appellee's agent that John D. Rogers should execute the lease in his own name and collect the rentals therefor. The rentals were deposited to the credit of John D. Rogers, in accordance with the agreement, and the subsequent conveyance of the land to M. A. Rogers and J. G. Rogers did not constitute a revocation of the former express agreement that John D. Rogers should be authorized to collect the rentals on their part of the land.

In the Crain case the testimony also sustains the finding that there was an express agreement by Crain that the rental sums should be deposited in a certain bank, and that this agreement was complied with by appellee's agent.

It is true that the quarterly installment of $5, due December 13, 1920, was not paid to the bank until January 18, 1921, but this action was commenced prior to the due date, and was still pending. The institution of the action to cancel the lease was a repudiation of the continued existence of the contract, and was tantamount to a refusal in advance to accept payment of the installment. Under those circumstances the lessee was not bound to tender payment on or before maturity in order to avoid a forfeiture, for it would have been fruitless

to make a tender of payment which had already, in effect, been refused. The subsequent payment of the amount to the bank during the pendency of the action was sufficient.

It is also contended in the Rogers case that the lease is void on account of insufficient description of the lands. There is no reference made, in the words of description or elsewhere in the contract, to the county and State where the lands are situated, but they are described by section and township subdivisions in accordance with the public survey. The courts take notice of the public surveys and of county lines, and we therefore are advised of the location of this land in Columbia County, and the description was sufficient.

This brings us to a consideration of the principal question in the cases, which turns upon the validity of the leases. It is in the ordinary form of such leases, and provides, in substance, for the lease of the lands in question to the lessee for the purpose of mining and drilling for coal, oil, gas or other minerals. The contract recited that it was executed "in consideration of the sum of $1" paid by the lessee, "and the further consideration hereinafter mentioned." It provides that, if oil be discovered and produced, the lessor shall receive one-eighth thereof; that, if coal or other ore is produced, the lessor shall receive one-eighth of the market value, and that, if gas or other minerals should be produced, the lessor shall be paid the sum of $100 for all of the product during each year. There are other stipulations with respect to drilling within a certain distance of buildings, and also with regard to the laying of pipe lines. There is a clause which provides that if operations for drilling or mining be not commenced "and prosecuted with due diligence within one year from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may prevent such forfeiture from year to year for five years by paying to the first party the sum of 25 cents per acre per year, in quarterly payments, until such well is commenced, or until ship-

ments from such mines have begun.'' Another clause provides that, if minerals be produced in paying quantities, the lease shall be in full force and effect for twenty-five years from the time of the discovery of such product.

There is a surrender clause which reads as follows:

"The party of the second part may at any time execute an instrument admitting and declaring this contract canceled, and, upon delivery of same to party of the first part, or upon the filing of same for record, this contract and all liabilities and payments under it, from and after such time, shall cease and determine.''

It is contended by counsel for appellants in each case that, on account of the surrender clause without additional consideration therefor, the contract is unilateral, lacking in mutuality, and void. Counsel invokes the rule announced by the decision cited in his brief that "a gas and oil lease which provides for its surrender at any time, without payment of rent or fulfillment of any of its covenants on the part of the lessee, creates a mere right of entry at will, which may be terminated by the lessor at any time before it is executed by the lessee.'' *Eclipse Oil Co.* v. *South Penn. Oil Co.,* 47 W. Va. 84.

We are of the opinion that this question is concluded against the contention of appellants by the decision of this court in the case of *Lawrence* v. *Mahoney,* 145 Ark. 310, and the decision of the Supreme Court of the United States in *Guffey* v. *Smith,* 237 U. S. 101, which we expressly approved and followed.

The contract in *Lawrence* v. *Mahoney, supra,* was similar to that involved in the present case, except that there was no surrender clause, and in the case of *Guffey* v. *Smith, supra,* the contract was substantially the same as in the present case, except that the surrender clause provided for the payment of the sum of one dollar as additional consideration for the exercise of that right.

It is earnestly argued that both of these cases are distinguishable from the present ones on account of the differences mentioned in the terms of the several contracts. We do not think that the cases are distinguish-

able in principle. In *Lawrence v. Mahoney* the contract, as in these cases, contained no absolute and unavoidable obligation on the part of the lessee to commence drilling or mining operations, nor did the contract involved in *Guffey v. Smith, supra,* contain any such obligation. But in each of those cases it was held that the payment of one dollar for the purpose of prosecuting such operations at the expense of lessee, and the payment of royalties upon the production of oil, gas or other minerals, constituted sufficient consideration to support the contract. There being no absolute obligation on the part of the lessee to commence operations, it added nothing to the contract to provide for a surrender, and the necessary effect of the decision in *Lawrence v. Mahoney* was to hold that there was sufficient consideration, and that the contract was not unilateral, even if a clause was inserted without additional consideration for a surrender by the lessee. It is true that in *Guffey v. Smith, supra,* the contract stipulated for the payment of a consideration of one dollar for the exercise of the right of surrender, but the court laid no stress upon the agreement to pay that sum. The necessary effect of that decision is that there was an original consideration for the whole of the contract, which included the right to surrender. The various provisions of a contract of this sort are not separable, and the original consideration supports the whole contract and every provision thereof.

An interesting discussion on this subject may be found in the annotations to the case of *Rich v. Donaghey* (Okla.) 177 Pac. 186, 3 A. L. R., p. 352. After the citation of authorities, the rule is stated as follows:

"In accordance with the general principles referred to, with reference to the test to determine the validity of a contract as affected by the question of mutuality of obligation imposed thereby, by the great weight of authority a lease of land for the development and production of oil and gas is not rendered invalid on the ground of want of mutuality by inclusion therein of a provision in effect entitling the lessee to surrender the lease and be relieved

from further liability, especially where he is required, as a condition of the surrender, to pay some designated sum of money; the consideration for the lease being otherwise sufficient, although not expressly referable to the surrender clause.''

Many authorities are cited (on page 381) sustaining the view that the rule just stated is unaltered by the fact that the original cash consideration for the lease was only one dollar, and that there was no requirement for the payment of any additional sum in order to be entitled to exercise the rights under the surrender clause. We are of the opinion that, where the original consideration was sufficient, as we held in *Lawrence* v. *Mahoney, supra,* this is sufficient to uphold the right of surrender, and no new consideration therefor is essential to prevent the contract from being unilateral.

It will be observed that the surrender clause in the contracts now under consideration only gives the right to escape such further obligations as would accrue subsequent to the surrender. It provides that, upon the exercise of the right of surrender, "this contract and all liabilities and payments under it, from and after such time, shall cease and terminate.''

The decree in each of these cases is therefore affirmed.