## HOUSE *v.* HALTON.

### Opinion delivered February 16, 1925.

1. MINES AND MINERALS—CONSIDERATION FOR OIL AND GAS LEASE.—A lease for five years and as long thereafter as oil and gas is produced from the land by the lessee, subject to termination if no well is commenced thereon within a year unless the lessee tenders the stipulated rental for the privilege of deferring the commencement for 12 months, etc., *held* based on sufficient consideration and valid when made.

2. MINES AND MINERALS—COMMENCING WELL WITHIN YEAR.—Where an oil and gas lease provided that it should be terminated if no well should be commenced "on said land" within a year, the locating of a well on other land in the vicinity of that described in the lease was not a compliance with the contract.

3. MINES AND MINERALS—RIGHT TO EXTENSION OF TIME FOR COMMENCING WELL.—The mere filing of a suit to forfeit an oil and gas lease was insufficient to entitle the lessee to an extension of time for commencing to drill a well, where the lessee was not prevented by injunction or otherwise from commencing drilling operations.

Appeal from Ouachita Chancery Court, Second Division; *George M. Lecroy,* Chancellor; affirmed.

*Lamar Smead* and *Coleman, Robinson & House,* for appellant.

The contract is enforceable and subject to reformation. 158 Ark. 448 and cases cited; 145 Ark. 566.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *E. E. Godwin,* for appellee.

The contract is unenforceable for lack of consideration. Equity will not enforce voluntary contracts, nor validate by reformation voluntary conveyances. 15 Ark. 519; 80 Ark. 458; 44 Ark. 182; 127 Ark. 54; 152

Ark. 387; 104 Wis. 81; 110 Mich. 505; 166 Mo. 110; 1 Story on Equity Jurisprudence, § 433; 24 Am. Eng. Enc. Law (2nd ed.) 653.

WOOD, J. This is an action instituted by the appellee against the appellants. The appellee alleged in substance that, on the 1st of July, 1920, the appellant, through his agents, requested the appellee to execute to appellant an oil and gas lease on property owned by the appellee; that appellant's agents represented that, within three months, a well would be begun in the neighborhood of this land to ascertain whether oil or gas was in that territory; that it was represented that the lease was wanted for another year, and nothing was said about rental; that the appellee and his wife executed the lease in accordance with this understanding; that the appellee has since discovered that there is a provision in the lease for an extension from year to year for a period of five years, provided the appellant deposited to the credit of the appellee the sum of $15 per acre as a consideration for the extension of said lease annually; that the appellant has failed to comply with this provision of the lease, and has failed to drill on the land as required in the lease. The appellee alleged that the lease was therefore null and void, and prayed that the same be canceled and that their title be quieted in said lands.

The appellant answered as trustee, denying that there were any representations made excepting those set forth in the lease, and he denied that the rental was to be $15 per acre, but alleged that, instead, the rental was to be fifteen cents per acre, which fact the appellee knew at the time. Appellant further alleged that the fifteen cents per acre had been deposited according to the terms of the lease, and he asked that the appellees be compelled to accept that sum and that the suit be dismissed. He prayed, by way of cross-relief, that the lease be reformed so as to read fifteen cents per acre for rental, and for such other and further relief as he was entitled to.

The lease under review was a lease from the appellee, S. E. Halton, lessor, to J. W. House, Jr., lessee, on

635 acres of land situated in Ouachita County, Arkansas, described therein. The lease was to remain in force for a period of five years from date, and "as long thereafter as oil or gas, or either of them, is produced from the *said land* by the lessee." Among other recitals constituting the consideration is the following: "If no well be commenced on *said land* on or before the 1st day of July, 1920, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Camden National Bank at Camden, Arkansas, or its successors, which shall continue as a depository, regardless of changes in the ownership of said land, the sum of 15 per acre dollars, which shall operate as a rental to cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner, and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down-payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred. Should the first well drilled *on the above described land* be a dry hole, then, and in that event, if a second well is not commenced on *said land* within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee, on or before the expiration of said twelve months, shall resume the payments of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that, upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of the rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

It is unnecessary to set out the testimony concerning the question as to whether the leases were procured through fraudulent representations by the agents of the appellant. The syndicate, for which J. W. House, Jr., was the trustee, procured the drilling of a well in the neighborhood or locality of the land in controversy prior to the expiration of one year, and procured the development of other wells. But no well was drilled on the land in controversy within one year. The appellant tendered fifteen cents per acre to the appellees, which they refused to accept, and appellees filed this action on August 16, 1922, to forfeit the lease.

The appellant concedes that he had not drilled a well *on the lands in controversy* on or before the first day of July, 1920, and has not yet drilled any wells *on the land,* but he contends that he did drill wells in the neighborhood of this land, and that such drilling was a compliance with the provisions of the lease by which the lease contract was terminated unless a well were begun on the land within a period of twelve months. The appellant also contends that this provision of the lease cannot avail appellee, for the reason that appellant had tendered to the appellee the fifteen cents per acre before the expiration of the year contemplated by the lease contract.

The appellant further contends that, although the five-year lease had expired since the institution of the suit by the appellee, nevertheless the appellee cannot avail himself of that fact, because the bringing of the suit by him entitled the appellant to an extension of time for the fulfillment of his contract until the litigation is concluded.

The trial court dismissed the appellant's cross-bill asking for a reformation of the lease, for want of equity, and granted the appellee's prayer terminating the lease and quieting the title to the lands involved in the appellee, from which is this appeal.

The lease was based upon a sufficient consideration, and was valid when made. We are convinced that there

was no fraud upon the part of the agents of the appellant in its procurement.

In *Epperson* v. *Helbron*, 145 Ark. 566, we held (quoting syllabus): "An oil and gas lease for a term of ten years in consideration of $1, in which the lessee covenanted, in case a well was not completed within one year from date of execution, to pay a fixed sum per annum for each additional year, and to pay a royalty of one-eighth of all the oil, is valid; part of the consideration being the exploitation of the mineral resources under the land." See also *Gross* v. *Menton*, 158 Ark. 448.

The appellant has failed to comply with the terms of the lease. The lease contract provides that "if no well be commenced on said land on or before the first day of July, 1920, this lease shall terminate as to both parties." This recital of the contract requires that a well be commenced on the land described therein, and not on some other land. The placing of a well on other land than that described, even though in the neighborhood or vicinity of the lands mentioned, is not a compliance with the provisions of the contract. Appellee Halton testified that the well was to be drilled on the lands described and not on some other land, and such are the plain terms of the lease. The words "on said land" could have no other interpretation.

Furthermore, the bringing of the suit by the appellee to declare a forfeiture of the lease does not entitle the appellant, under the facts of this record, to an extension of time for commencing drilling operations. While the appellee instituted this action against the appellant, he did not seek an injunction to restrain him from drilling operations on the land, and did not interpose any obstacle in appellant's way other than the mere filing of the suit.

A court of chancery, upon a proper showing, might grant relief to a lessee where it would be unconscionable not to do so under particular circumstances. But the mere filing of a suit claiming that the contract had been forfeited is not sufficient. It is not shown that the appel-

lee, by asking for an injunction, or by threats or intimidation, attempted to prevent the appellant from performing his contract to drill. Appellant therefore is not in an attitude to claim that the filing of the suit interfered with his drilling operations, and that he is therefore entitled in equity to have the time for the performance of his contract extended. The appellant himself has asked for affirmative relief in the reformation of the lease contract. The lease, on its face, plainly says that appellant must pay $15 per acre rental, instead of fifteen cents per acre, for the privilege of deferring the commencement of his well for twelve-month periods, and appellant concedes that he has not complied with the contract in this respect, and asks that the lease be reformed to show that it was the mutual intention of the parties that appellant should pay fifteen cents per acre instead of $15. If appellant intended to make this contention, he should have been more prompt in instituting his action to have the contract interpreted and reformed to conform with his notion of the proper construction to be given the contract. Appellant is not in an attitude to ask the interposition of a court of chancery to prevent the forfeiture of the lease.

The decree is therefore in all things correct, and it is affirmed.